JAMES H. KRAY V. MUTUAL RESERVE LIFE INSURANCE COMPANY.

Decided May 4, 1908.

**1.—Appeal—Absence of Findings by the Court—Practice.**

When a case is tried without a jury and the trial judge does not file conclusions of law and fact the appellate court will assume, in support of the judgment, that every material fact necessary to sustain the judgment under the pleadings and evidence was found by the trial judge.

**2.—Life Insurance—Failure to Pay Dues—Forfeiture.**

Where, by the terms of a contract of life insurance, the insured was required to pay premiums bi-monthly as a condition of the continued existence of the policy, and the giving of notice of the due dates of such premiums was expressly waived, a failure to pay such premiums within the time stipulated will work a forfeiture of the policy, and the failure on the part of the company to give such notice will be no excuse even though it had been the custom of the company to do so.

**3.—Same.**

Where a contract of life insurance stipulated for the payment of special assessments upon the policy as well as regular periodical assessments, a belief on the part of a policy holder that certain special assessments which he had paid were unauthorized, will not justify a refusal to pay the regular assessments. Contract of insurance considered, and held to authorize special as well as regular assessments.

**4.—Same.**

In a suit upon a policy of life insurance, evidence considered, and held to show an intention on the part of the insured to let the policy lapse.

Appeal from the District Court of Fayette County.   Tried below before Hon. L. W. Moore.

*John T. Duncan* and *L. C. McBride,* for appellant.—An insurance company claiming a forfeiture of a policy for nonpayment of an assessment has the burden of showing a necessity for and the validity of the assessment, and it must show the existence of the precise conditions which, by the terms of the contract, caused the assessment to become due.   Miles v. Mutual Reserve, etc. (Wis.), 84 N. W., 161; Stewart v. Grand Lodge, 46 S. W., 579; Hartford Insurance Company v. Hyde (Tenn.), 48 S. W., 968; Mutual Reserve v. Hamlin, 139 U. S., 298.

A beneficiary suing upon a life insurance policy payable to him upon death of the insured, makes out a prima facie case by proof of the execution and issuance of the policy and the death of the insured, and it is not incumbent upon him to prove compliance with the conditions subsequent, noncompliance with which will work a forfeiture of the policy.   East Texas Fire Insurance Company v. Dyches, 56 Texas, 569-70; Merchants Insurance Company v. Arnold, 32 S. W., 579; Burlington v. Rivers, 9 Texas Civ. App., 177; Phoenix v. Coffman, 10 Texas Civ. App., 631; Allemania v. Fred, 11 Texas Civ. App., 311; 2d Cooley Briefs, 1505.

*West, Chapman & West* and *Theodore Mack,* for appellee.—The undisputed facts showing that James H. Kray, the creditor of Blum, the insured, upon whom devolved the obligation of paying the premiums, calls, and assessments on the policy in suit, voluntarily abandoned the contract of insurance, the judgment of the trial court is in any event correct, and should not be disturbed on appeal.   Mutual Life Ins. Co. v. Allen, 178 U. S., 351, 44 L. ed., 1098; Mutual Life Ins. Co. v. Phinney, 178 U. S., 327, 44 L. ed., 1088; Mutual Life Ins. Co. v. Sears, 178 U. S., 345, 44 L. ed., 1096; Mutual Life Ins. Co. v. Hill, 178 U. S., 347, 44 L. ed., 1097.

REESE, ASSOCIATE JUSTICE.—In this case James H. Kray sues the Mutual Reserve Life Insurance Company to recover $3000, the amount of an insurance policy upon the life of Leon Blum, who died April 28, 1906.   The policy was in favor of Kray as creditor of Blum, his debt being in excess of the amount of the policy.   Defendant, in addition to general denial, pleaded forfeiture and abandonment of the policy.   The cause was tried without a jury, and judgment was for defendant, from which plaintiff appeals.

No conclusions of law and fact were filed. In support of the judgment we must assume that every material fact necessary to ·sustain the judgment, under the pleadings, was found by the court in favor of appellee, if there is sufficient evidence to authorize such finding.

The following we find to be the facts: The policy in question was issued by the appellee June 22, 1896, and provided for the payment to appellant of $3000 upon the death of Leon Blum. Appellant was a creditor of Blum in an amount in excess of the amount of the policy. Blum died April 28, 1906, and upon demand of payment of the policy by appellant, payment was refused on the ground that the policy had lapsed for nonpayment of assessment call No. 137, due December 1, 1904. The policy contained the following provisions:

"In consideration of the application for this policy of insurance, which is hereby made a part of this contract, and of a first payment of twenty-four dollars, to be actually made in cash on or before the delivery thereof, and the further payment of nine dollars, payable to the Association within sixty (60) days from the date of this policy, for the General Expense Fund of the Association the Mutual Reserve Fund Life Association does hereby receive Leon Blum, of Galveston, county of Galveston, State of Texas, as a member of said Association; and upon the condition of the payment of twenty-one dollars and eighty-four cents, on account of Mortuary Premiums or Dues, within thirty days from the first weekday of the months of October, December, February, April, June and August next ensuing, and of the payment as hereinafter provided, within thirty days from the first weekday of said months, in every year during the continuance of this policy, of the subsequent Mortuary Premiums and Dues there shall be payable to James H. Kray (Creditor), as his interest may appear, of La Grange, County of Fayette, State of Texas, if living at the time of the death of said member, otherwise to the executors or administrators of said beneficiary, the sum of three thousand dollars."

Endorsed upon and as a part of said policy were certain "Benefits and Provisions," the material ones of which are as follows:

"Benefits and Provisions of Policy.

"Clause 1. The foundation principle of the system presented by the Mutual Reserve Fund Life Association is to collect from the members the sum required for the payment of its current death claims and legitimate expenses; the same equitably apportioned among the members according to the age of the member, and the amount of insurance held by each.

"The Reserve or Emergency Fund is admitted to be an excess over the current cost, and, therefore, it is held, first, for the payment of excessive death claims, its object being to prevent excessive payments from the members in any year; second, if not so required, to be returned to the members by credit on their future premiums, or in cash, at stated periods, as their contracts provide."

"Clause V. Within thirty days from the first weekday of the months of February, April, June, August, October and December of each year, after the first payment on account of Mortuary Premiums hereunder shall become due there shall be due to the Association for the payment of Death Claims such an amount as its Executive Committee

may assess (including the amount required for Reserve or Emergency Fund), which amount, together with the Dues for expenses at the rate established by the Board of Directors, shall be apportioned among the members in ratio as per table endorsed hereon; and shall at least as often as once in ten years be reapportioned in accordance with the rate for attained age. Rates for ages not included in said table shall be based upon the American Experience Table of Mortality. There shall be deducted from the payments made on account of Mortuary Premiums and Dues, at the respective succeeding bi-monthly dates above mentioned, such payments as are then respectively due. Upon the maturity of this contract there shall be deducted from the sum payable hereunder any indebtedness of the member or beneficiary to the Association, including the balance, if any, of mortuary premiums and dues for the then policy year."

"Clause VII. After providing for the Death Fund, the remainder of the net receipts from Mortuary Premiums paid under this policy, not exceeding twenty-five percent, shall be added to the Reserve of Emergency Fund, for the exclusive benefit of the members; and the net interest on the same, as it accrues, shall be placed to the credit of the Death Fund, to be used in providing for current death claims. The Reserve or Emergency Fund above $100,000 may be applied to the payment of claims in excess of the American Experience Table of Mortality, or to making up any deficiency that may exist in the Death Fund. The total assets of the Association, including its Reserve or Emergency Fund and accretions thereon, and also the amount held or deposited in the Death Fund account, and the proceeds from the next Mortuary Call, are hereby made liable for the payment of all benefits payable under this policy, and the insurance hereunder is conditional thereupon."

"Clause VI. All notices addressed to a member, or other person designated by said member, at the last postoffice address appearing upon the books of the Association, shall be deemed a sufficient notice, and affidavit of addressing and mailing the same according to the usual course of business of said Association, shall be held to be conclusive proof of due notice to every person acquiring any interest hereunder. And in the event of the nonreceipt of a notice, it shall be nevertheless a condition precedent to the continuance of this policy, that a sum equal at least to the amount of the last preceding payment on account of Mortuary Premiums and Dues shall be paid said Association at the next ensuing date specified on the first page hereof, and any deficiency in said amount shall be paid upon the demand of the Association. Notice that a Mortuary Premium and Dues are payable to said Association at the dates written on the first page of this policy in every year, is hereby given and accepted for all purposes, and any further or other notice is expressly waived."

"Clause XV. If this policy of insurance shall have been in continuous force for three years from its date, it shall thereafter be incontestible except for fraud, nonpayment of stipulated payments at the times and in the manner herein provided, or for misstatement of the age of the member in the application therefor, subject to the provisions hereunder."

Endorsed upon the policy and expressly made a part of it was a table of rates regulated according to age, showing the rate for a person sixty years of age on a $3000 policy to be $21.84, bi-monthly, with the statement, "Should the mortality of the Association in any year require an amount in excess of the sum provided for by these rates, together with the amount in the Death Fund and interest derived from the reserve or emergency fund, such excess shall be paid from the reserve or emergency fund."

The application signed by Blum and appellant contained the following: "It is hereby agreed that . . . the constitution or by-laws of the Association with the amendments thereto as modified by the Board of Directors in adopting other plans and systems as authorized by said constitution or by-laws, together with this application, are hereby made a part of any policy that may be issued hereon." The constitution or by-laws contained the following provisions expressly made a part of the policy:

"On the first weekday of the months of February, April, June, August, October and December of each year, *and at such other or additional dates as the Board of Directors may, from time to time, determine,* an assessment or call shall be made by the Board of Directors upon that part of the membership holding certificates or policies under which the cost of the insurance is provided for the assessment, in force at the date of the last death of the audited death claims prior thereto, for such a sum as the Executive Committee may deem sufficient to meet their proportionate share of the existing policy claims, the same to be apportioned among the members of the several classes holding certificates or policies under which the cost of the insurance is provided for by assessment, either at age of entry, or attained age, or both, as the Board of Directors may determine, the said apportionment to be made upon the same basis among the members of any one class.

"A failure to pay the assessment or call within thirty days from the first weekday of February, April, June, August, October and December, *or within thirty days from the day of the date of such other or additional periods as may be named by the Directors,* or to pay a premium within the time named in the policy, shall forfeit membership in the company, with all rights thereunder, and the certificate or policy of insurance shall be null and void."

Appellant paid, through Robert I. Cohen, at Galveston, to whom notices were to be sent, the regular bi-monthly assessments, due on the first weekdays of February, April, June, August, October and December, and required to be paid within thirty days thereafter, of $21.84 each, up to and including the one due October 1, 1904. There were also demanded of him, which he paid, the following special assessments (or mortuary calls), July, 1901, $21.84; September, 1901, $21.84; November, 1901, $21.84; November, 1903, $47.25; September, 1904, $55.98, making the total assessments paid, $1237.91. These special assessments were paid upon notices containing the statement that unless paid the policy would be forfeited. In November, 1904, a notice was received on printed form, dated November 1, 1904, to the effect that a "mortuary call" for $55.98 was made upon the policy "pursuant to the order of the Board of Directors and Executive Committee and in

accordance with your contract with the company," which appellant was required to pay within thirty days upon penalty of forfeiture of the policy. The other special assessments, in addition to the regular bimonthly assessments provided for in the face of the policy, were paid upon similar notices. Appellant did not pay this last special assessment in November and did not pay any further assessments regular or special.

The policy was forfeited for failure to pay a regular bi-monthly assessment for $21.84 due December 1, 1904, and required to be paid within thirty days thereafter, being assessment No. 317.

The life of the policy was conditioned upon the continued payments of the assessments provided, and it was conditioned that failure to pay should, *ipso facto,* forfeit the policy, and all amounts paid thereon. It was shown that no notice was received of the call for the bi-monthly assessment No. 317, called December, 1904, nor was it shown by appellees that any such notice was ever sent. There is no express provision in the policy requiring notices of bi-monthly assessments to be sent, but it seems from its general provisions that such notices were contemplated and such had been the course, as to all assessments previous to that of December, 1904, upon which the forfeiture rests.

When the call for the special assessment of $55.98, November, 1904, was received by Cohen, he advised appellant not to pay it or any other special assessments, and appellant directed Cohen not to pay this November assessment.

It is contended by appellant, and the question is presented by the first two assignments of error, that the uncontradicted evidence established his right to recover the amount of the policy, and that the policy had not lapsed or been voluntarily abandoned. Twenty-one propositions are submitted under these assignments. We will not undertake to discuss or pass upon these propositions separately. It is unnecessary to the proper decision of this appeal to do so. Three general propositions may be stated as embracing appellant's contentions:

First. The forfeiture of the policy for failure to pay the regular bimonthly assessment No. 317 of December, 1904, was unauthorized because no notice had been received or sent of such call.

Second. Appellant was not required to pay this assessment because of the notice in the call for special assessment of $55.98 of November, 1904, that if that assessment was not paid the policy would be forfeited, such forfeiture not being authorized, appellee having no right under the contract to make this assessment.

Third. Because the amounts paid on the special assessments paid by him, aggregating $168.75, with interest thereon, was more than sufficient to pay all regular bi-monthly assessments properly chargeable to him, and not paid, and due and unpaid up to the date of Mr. Blum's death, and that he was entitled to have had the amounts so wrongfully extorted from him, under threat of a forfeiture of the policy, applied to such regular bi-monthly assessments, which would have kept the policy alive up to Blum's death.

As to the want of notice of assessment No. 317: Conceding that no notice was either received or sent, appellant has overlooked certain provisions of the policy with regard to notice, which to us appear to be

decisive. Clause 6 of the policy contains the following: "And in the event of nonreceipt of a notice, it shall nevertheless be a condition precedent to the continuance of this policy that a sum equal at least to the amount of the last preceding payment on account of Mortuary Premiums and Dues shall be paid said Association at the next ensuing date specified on the first page hereof, and any deficiency in said amount shall be paid upon demand of the Association. Notice that a Mortuary Premium and Dues are payable to said Association at the dates written on the first page of this policy in every year, is hereby given and accepted for all purposes, and any further or other notice is expressly waived." By the terms of the contract appellant was required, without notice, to pay within thirty days from the first weekday in December, 1904, a Mortuary Premium and Dues. The amount of this premium was to be fixed by the notice, if one was received, and if no notice was received the amount was to be the same as the last preceding premium paid. This was expressly intended to provide for the contingency which appellant claimed to have occurred in this case. Without the receipt of any notice appellant was required by the terms of the contract to continue to pay premiums bi-monthly as a condition of the continued existence of the policy.

As to the second proposition: It can not be conceded that the special assessments, or mortuary calls, were not authorized by the contract. The constitution or by-laws of the association are expressly made a part of the contract of insurance by the application. By article 7, section 6, of the by-laws, it is provided assessment calls may be made by the Board of Directors, in addition to those made payable on the first weekday in February, April, June, August, October and December of each year, payable at other and additional dates for such sums as the Executive Committee may deem sufficient to meet their proportionate share of the existing policy claims, as the Board of Directors may determine. It is further provided that a failure to pay the assessment or call within thirty days from the first weekdays of the months named or within thirty days from the day of the date of such other or additional periods as may be named by the directors, or to pay a premium within the time named in the policy, shall forfeit membership in the company and the policy shall be void. The secretary of the Association testified that all of the special mortuary calls were regularly made by the Board of Directors and Executive Committee.

It does not appear that appellant ceased to pay premiums because of the notice that if he did not pay the November call for $55.98 the policy would be forfeited. On the contrary, our conclusion from the evidence is that on account of these extra calls for such large amounts, which he did not understand, or which he did not consider in accordance with his contract, he elected to drop the policy and let it lapse. Whether these special assessments were authorized or not, they did not excuse him for the failure, without complaint or demand of explanation from the company, to pay the regular bi-monthly assessments as called for in the face of the policy, from December, 1904, up to the date of Blum's death in April, 1906. The only explanation of this

failure is that he became tired of paying and voluntarily ceased, intending to abandon the policy.

In view of the large discretion expressly given by the by-laws, made part of the policy, to the board of directors in the matter of making special mortuary calls, we can not say that they were not authorized to make those demanded of appellant. The matter was left entirely to their discretion. This is the contract made by appellant and he must abide by it.

The third proposition is answered, substantially, by what has been said. If, however, the special assessments were unauthorized, if appellant desired to have the money so demanded of him and received by the company applied to the payment of future regular bi-monthly mortuary calls, he should have made such demand of the company at the time. By his silence until after Blum's death, he has waived the irregularity, if any, in the special calls. His silence in this matter, and his failure, without a word of complaint to the company, to pay any further assessments, evidence to our minds conclusively an intention to abandon the policy. There can be no excuse for his failure to pay the eight bi-monthly assessments due between the date of his last payment and Blum's death. Such failure, when we consider all the provisions of the policy, is entirely inconsistent with any intention to keep it alive.

Our conclusion is that the evidence is sufficient to support the finding that the policy lapsed by its terms, upon the failure to pay the December call No. 317, and further, that by his failure to pay any further premiums, appellant elected voluntarily to abandon the policy.

This is decisive of the case. We have considered all of the assignments of error and the various propositions thereunder and are of the opinion that none of them present any grounds for reversing the judgment, and they are all overruled, no further discussion of them being necessary. The judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.